ADOLPH HIRSCH & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3230. Promulgated July 23, 1927.

Upon the evidence held that the petitioner and the Brazilian Rubber Plantation & Development Co. were affiliated during the calendar year 1920.

*Meyer Bernstein, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

In this proceeding the petitioner seeks a redetermination of its income and profits tax for the calendar year 1920, for which year the Commissioner determined a deficiency of $12,386.24. The petitioner alleges that the Commissioner erred in refusing to affiliate it with the Brazilian Rubber Plantation & Development Co.

FINDINGS OF FACT.

Adolph Hirsch & Co., Inc., hereinafter called the Hirsch Company, is a domestic corporation, organized August 18, 1919, and existing under and by virtue of the laws of the State of New York. The Brazilian Rubber Plantation & Development Co., hereinafter called the Brazilian Company, is a domestic corporation organized July 6, 1906, and existing under and by virtue of the laws of the State of New York. The principal place of business of both of these corporations is 63 Park Row, City of New York, State of New York.

Since 1888, Adolph Hirsch, a former American Vice-Consul to Brazil, and his brother, I. Henry Hirsch, have been engaged in the business of importing diamonds, rubber, wax, cocoa, hides, skins, etc., and have had numerous branches and correspondents, one of the main South American branches being located at Bahia, Brazil. Until 1919, the date of incorporation of the petitioner company, this business was conducted as a partnership, known as Adolph Hirsch & Co., in which Adolph Hirsch owned a 60 per cent interest and his brother, I. Henry Hirsch, 40 per cent. At the time of incorporation, Adolph Hirsch transferred 10 per cent and I. Henry Hirsch, 5 per cent, of their holdings to their nephew, Arthur A. Glass, and these three continued to be the only stockholders in the corporation of Adolph Hirsch & Co. Capital stock of the Adolph Hirsch & Co. in the amount of $400,000 was issued to Adolph Hirsch for the good will of the partnership. All the assets and liabilities of the partnership were transferred to the corporation, which continued to conduct the business in the same manner as it had been carried on

by the partnership. Adolph Hirsch & Co., both as a partnership and a corporation, was represented in Brazil by a Brazilian Company called The Companhia Brazileiro Exportadivia. The Brazilian Company, during 1920, was engaged in working plantations in the State of Pianhy, Brazil, the outlet or port of shipment of the rubber and other products grown by the company being Bahia, Brazil.

A plantation was acquired in 1905, consisting of 27 square miles of land suitable for a rubber plantation, to which was added an additional 27 square miles adjacent thereto, acquired from the State of Pianhy, Brazil. Title to the land was taken in the name of Adolph Hirsch and the sale is still registered in his name in the Brazilian Registry. In 1906, the Brazilian Company was formed to operate these plantations.

The total authorized capital stock of the Hirsch Company was 20,000 shares, par value $100 each, all of which had been issued and were owned as follows:

|  | Shares | Per cent |
|---|---|---|
| Adolph Hirsch | 13,570 | 67.85 |
| I. Henry Hirsch | 5,400 | 27.00 |
| Arthur A. Glass | 1,030 | 5.15 |
| Total | 20,000 | 100.00 |

The stock of the Brazilian Company, during the year 1920, aggregated 4,240 shares and was owned and controlled as follows:

|  | Shares | Per cent |
|---|---|---|
| Adolph Hirsch | 1,840 | 43.42 |
| I. Henry Hirsch | 519 | 12.21 |
| Bloomberg family and others | 1,881 | 44.37 |
| Total | 4,240 | 100.00 |

The Brazilian Company never had an office of its own, never had a selling organization of any kind, never existed as a buying organization or as a commercial entity in any place whatsoever. All of its affairs were handled by the brothers, Adolph Hirsch and I. Henry Hirsch, first through the partnership of Adolph Hirsch & Co. and later by its successor, the corporation, Adolph Hirsch & Co. No regular set of books was kept recording the affairs of the Brazilian Company, no cash book, no ledger, no sales book. It did have a separate bank account from September 5, 1906, to December 1913, but since then, has had no separate bank account. All activities on the plantation and elsewhere were financed and managed entirely by

the Hirsch Company, through Adolph Hirsch and I. Henry Hirsch, which furnished the money for the development of this exploitation.

The affairs of the Hirsch Company and the Brazilian Company were conducted through one office and one set of employees. Funds for the conduct of the affairs of the Brazilian Company were advanced by the Hirsch Company, either by cable transfer of money or the opening of a credit against which a draft would be made by the people in Brazil. No funds were supplied by the Brazilian Company for any of the operations or for any purpose whatsoever.

All sales of cotton, rubber, and other merchandise produced by the Brazilian Company were made through and in the name of the Hirsch Company. In Europe, the merchandise was sold by the correspondents of the Hirsch Company. Proceeds of such sales were credited on the books of the Hirsch Company against advances made by it. No sales of merchandise were made to or through any organization other than the Hirsch Company and the agents of the Hirsch Company abroad. All of the affairs of the Brazilian Company were conducted by Adolph Hirsch and I. Henry Hirsch as a department of the Hirsch Company business in the same manner as were conducted the various other departments of their business.

No regular meetings of the stockholders and directors of the Brazilian Company were held.

At the time of the incorporation of the Brazilian Company, Adolph Hirsch and I. Henry Hirsch, in an attempt to befriend some of their very close friends, permitted them to subscribe to a portion of the stock of the Brazilian Company and the ownership of this stock was made a " family affair among friends." No subscriptions of stock were solicited from the general public. These stock owners were divided into three groups, one group of which comprised all intimate friends of Adolph Hirsch, another group consisted of intimate friends of I. Henry Hirsch, and the third group consisted of their attorneys and members of their attorneys' family, who were intimate friends of the Hirsches.

The largest block of the minority stock was owned by Harry Bloomberg and his family. Mr. Bloomberg was the personal attorney of the Hirsch brothers and had been intimately associated with them for 35 years. It was he who acted as attorney for the incorporation of the Brazilian Company and he has been a stockholder and director since its incorporation. Bloomberg testified " that we went into it with our eyes open with the hope of realizing something and if we did not, we know you did your utmost to make it productive and it is with no fault of yours if it is a failure." The minority stockholders were all entirely satisfied with the manner in which the Brazilian Company was operated and never, at any time, interfered with the policy of the Hirsch brothers.

There was complete harmony between the stockholders and the officers. The stockholders had absolute confidence in the integrity and ability of the officers and actually left the management and operation entirely in their hands. Adolph Hirsch and I. Henry Hirsch had complete control of the management and operation of both corporations.

The minority stockholders made their investment in the Brazilian Company, realizing that it was a speculation and permitted Adolph Hirsch and I. Henry Hirsch to manage the company.

The business of the Hirsch Company and the Brazilian Company was managed as a single business entity, using the same personnel and the same office.

The Commissioner refused to permit the two corporations to file a consolidated return for the calendar year 1920, on the ground that they were not affiliated corporations, within the provisions of section 240 (b) of the Revenue Act of 1918, and asserted a deficiency of $12,386.24.

OPINION.

GREEN: The question here is whether the petitioner should be affiliated with the Brazilian Rubber Plantation & Development Co. Affiliation, if it exists, must be based on ownership or control of substantially all the stock by the same interests.

Section 240 (b) of the Revenue Act of 1918 is as follows:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

Adolph Hirsch and I. Henry Hirsch, brothers, owned 94.85 per cent of the stock of the Hirsch Company and they also owned 55.63 per cent of the stock in the Brazilian Company. The Brazilian Company was formed in 1906 to develop a large tract of land which Adolph Hirsch had acquired in Brazil, and the sole activity of the corporation was in this development. After its organization all advances were made directly by the Hirsch Company. No funds were supplied by the Brazilian Company for any of the operations or for any purpose whatsoever. It maintained no separate office and all of its affairs were conducted by Adolph Hirsch and I. Henry Hirsch as a department of the Hirsch Company. The minority interests were in the hands of friends and associates of Adolph and I. Henry Hirsch, who had been induced to go into the venture on account of its speculative nature. The largest group of minority stockholders was composed of Bloomberg and his imme-

diate family. Bloomberg had been a close friend and business associate of Adolph Hirsch and I. Henry Hirsch for some thirty-five years. · He represented Adolph Hirsch & Co. as attorney while it was a partnership and continued to act in this capacity for the successor corporation. He was also the attorney who organized the Brazilian Company and from the time of its organization served as a director and attorney. He testified that he was entirely satisfied to trust the management of the Brazilian Company to the judgment of Adolph and I. Henry Hirsch.

The intercompany transactions show that there was the closest relationship existing between the two organizations, the Brazilian Company being operated as a department of the Hirsch Company. It is a clear case of commercial and economic unity.

In *Midland Refining Co.*, 2 B. T. A. 292, it was stated:

A careful examination of the stockholdings and the relationships existing between the various holders shows that substantially all of the stock is owned or controlled by the same individuals. It seems to follow, naturally, if a group of individuals owns or controls substantially all of the stock of both corporations, and if such ownership or control is by all exercised for one purpose, namely, the joint success of the corporations, that these individuals meet the requirements of the words "the same interests."

The stockholdings and conduct of the two corporations involved in this proceeding meet the above requirements.

We believe that the two corporations were affilated.

> *Judgment for the petitioner upon the issue raised on 15 days' notice, under Rule 50.*

Considered by ARUNDELL and STERNHAGEN.